21 Cal.App.4th 243 (1993)
25 Cal. Rptr.2d 827
THE PEOPLE, Plaintiff and Respondent,
v.
JONATHAN EDWARD LEWIS, Defendant and Appellant.
Docket No. A058378.
Court of Appeals of California, First District, Division One.
December 22, 1993.
*244 COUNSEL
Patricia L. Watkins, under appointment by the Court of Appeal, for Defendant and Appellant.
*245 Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
STEIN, J.
Appellant was convicted after a jury trial of attempted voluntary manslaughter (Pen. Code, §§ 664, 192),[1] and brandishing a deadly weapon (§ 417, subd. (a)(1)). The jury further found that appellant inflicted great bodily injury upon the victim within the meaning of section 12022.7, and used a deadly or dangerous weapon in commission of the offense under section 12022, subdivision (b). The trial court determined that appellant suffered two prior serious felony convictions under section 667, subdivision (a).
Appellant was sentenced to a total state prison term of sixteen years, consisting of the middle term of three years for attempted voluntary manslaughter, a consecutive three-year term for the great bodily injury enhancement, and two consecutive five-year terms for the prior felony convictions. The one-year enhancement for use of a weapon was stayed, and appellant was sentenced to time served for the conviction of brandishing a weapon.
The sole contention presented to this court by appellant is that his three-year enhancement for great bodily injury must be stricken as "exempt from ... section 12022.7."[2] Appellant submits that to avoid "anomalous sentencing results" inconsistent with "the legislative intent," the offenses exempted from section 12022.7 must by implication also include attempted manslaughter.
Appellant's argument has a facile appeal. Section 664, subdivision 1, provides that the punishment for an attempted felony is "one-half the term of imprisonment prescribed upon a conviction of the offense so attempted." Since the enhancement for infliction of great bodily injury excludes manslaughter, appellant reasons that had he killed his victim he would have been sentenced to six years. (§ 193, subd. (a).) Thus, he concludes that an incongruous sentence has resulted since, having failed in his attempt to kill his victim, he has nevertheless been sentenced to six, instead of three years. *246 We find no support for appellant's argument in either the law or the facts, and affirm his sentence.

FACTS
Appellant and Charlotte Johnson had been friends since they were in kindergarten together over 25 years ago. Travis Hill was Charlotte's boyfriend. On the evening of October 9, Travis was staying at Charlotte's house and his car was parked in front. Appellant arrived at Charlotte's house around 11 p.m. and demanded admittance. Travis told him to leave. Appellant refused to go, challenged Travis to fight and armed himself with a stick. Rather than fight with appellant, Travis called the police. Appellant then broke the windows of Travis's car.
On the evening of December 5, Travis was again staying at Charlotte's house. Around midnight appellant entered Charlotte's house either through the back door or a second story window. After trying the door to Charlotte's bedroom and finding it locked, appellant went to the kitchen and armed himself with a knife. He then hid in the closet of one of the other bedrooms. In the morning, Charlotte's daughter Erika was awakened by her brother's screams that there was a robber in the house. She entered his bedroom, looked in the closet and saw a man pointing a knife at her. Erika ran downstairs to the kitchen where her mother was making breakfast. Charlotte picked up two kitchen knives and started upstairs to confront the intruder. She immediately encountered appellant coming down the stairs holding a knife by his side. Charlotte asked appellant for the knife and he gave it to her.
When Travis heard the commotion, he picked up a crutch fearing the intruder may be armed; however, when he recognized appellant he discarded the crutch, not anticipating an armed confrontation. Travis rushed toward appellant intending to throw him out of the house because he had frightened the children and upset Charlotte. When Travis grabbed appellant around the chest and pushed him backward, appellant immediately began pounding his fist into Travis's back. The blows hurt more than a punch, but Travis was stabbed four or five times before he realized appellant was using a knife. He received several more stab wounds before he could grab appellant's wrists and stop the attack. Dizzy from loss of blood, Travis fell to the floor carrying appellant with him. Appellant straddled Travis and, holding the knife in both hands, tried to stab him in the face, neck and chest. With all his waning strength, Travis was able to hold off the blow until Charlotte called the police. Appellant then ran from the house.
During the attack Travis briefly lost his sight and believed he was dying. He suffered eight stab wounds to his back and shoulder, one of which *247 punctured his lung. He lost over a pint of blood and was hospitalized for two and a half days.

DISCUSSION

I.
"The fundamental rule is that a court should ascertain the intent of the Legislature so as to effectuate the law's purpose, and in determining intent the court first turns to the words used. (People v. Black (1982) 32 Cal.3d 1, 5 [184 Cal. Rptr. 454, 648 P.2d 104].) [¶] When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it. (People v. Weidert (1985) 39 Cal.3d 836, 843 [218 Cal. Rptr. 57, 705 P.2d 380]; In re Atiles (1983) 33 Cal.3d 805, 811 [191 Cal. Rptr. 452, 662 P.2d 910].)" (People v. Overstreet (1986) 42 Cal.3d 891, 895 [231 Cal. Rptr. 213, 726 P.2d 1288].) "In the absence of statutory ambiguity or other constitutional infirmity, we cannot disregard the plain language of these statutes." (People v. Ladanio (1989) 211 Cal. App.3d 1114, 1119 [260 Cal. Rptr. 12], overruled on other grounds in People v. King (1993) 5 Cal.4th 59, 67 [19 Cal. Rptr.2d 233, 851 P.2d 27].)
(1) Section 12022.7 requires a three-year consecutive term be imposed upon anyone who "in the commission or attempted commission of a felony" personally inflicts great bodily injury on his victim. Excluded from the operation of this section are murder, manslaughter, and two types of arson resulting in great bodily injury. "The legislative inclusion of the four crimes as exceptions necessarily excludes any other exceptions." (People v. Superior Court (Grilli) (1978) 84 Cal. App.3d 506, 513, fn. 5 [148 Cal. Rptr. 740], overruled on other grounds in People v. Superior Court (Mendella) (1983) 33 Cal.3d 754, 758 [191 Cal. Rptr. 1, 661 P.2d 1081]; see also People v. Young (1981) 120 Cal. App.3d 683, 695[175 Cal. Rptr. 1]; People v. Gray (1979) 91 Cal. App.3d 545, 551 [154 Cal. Rptr. 555].) In the face of this clear language, there is no reason to construe section 12022.7 to exempt attempted manslaughter from the enhancement for infliction of great bodily injury.

II.
Other courts have considered the analogous argument that attempted murder must by implication be exempted from the application of this section, and uniformly have rejected the proposition.
"[I]n the first paragraph of Penal Code section 12022.7, the statute specifically mentions that enhancements apply to persons who `in the commission or attempted commission of a felony' inflict great bodily injury on *248 other persons. Yet, in the third paragraph, where exempted crimes are listed, there is no specific exemption for attempts. This evidences an intent of the Legislature not to exclude attempted murder from the provisions of the section. It is obvious that the offense of murder involves the ultimate in infliction of great bodily injury, whereas attempted murder might involve no bodily injury at all. Thus, the legislation is grounded in a reasonable legislative purpose." (People v. Wells (1983) 149 Cal. App.3d 497, 505 [195 Cal. Rptr. 608].) "The law is quite clear that while section 12022.7 prohibits enhancement for murder, attempted murder is a separate crime not covered by the statute and may be enhanced." (People v. Allen (1985) 165 Cal. App.3d 616, 631 [211 Cal. Rptr. 837].) In the face of this prior analogous authority, there is no reason to construe the statute to exempt attempted manslaughter from the enhancement for infliction of great bodily injury.

III.
The legislative histories of sections 12022.7 and 664 do not support an implied exclusion of attempted manslaughter from the application of section 12022.7. We must assume that the Legislature is aware of our decisions when we interpret statutes. "[F]ailure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes are made in other respects, is indicative of an intention to leave the law unchanged in that respect." (Kusior v. Silver (1960) 54 Cal.2d 603, 618 [7 Cal. Rptr. 129, 354 P.2d 657].)
Section 12022.7 was enacted in 1976 as part of the determinate sentencing law, to enhance sentences for those who inflict great bodily injury in the commission of their crimes. When originally enacted, section 12022.7 exempted from its application "assault with a deadly weapon or assault by means of force likely to produce great bodily injury under Section 245." (See Stats. 1977, ch. 165, § 94, p. 679.) The section was amended in 1978 to delete the exemption for these offenses (see Stats. 1978, ch. 579, § 40, p. 1996) and was again amended in 1979 to exempt from its operation arson resulting in great bodily injury. (See Stats. 1979, ch. 145, § 17, p. 341.) Prior to the 1979 amendment, People v. Superior Court (Grilli), supra, 84 Cal. App.3d at page 513, had concluded that attempted murder was not exempt from enhancement by section 12022.7.
Section 664 was enacted almost 100 years before section 12022.7 as part of the original Penal Code. (§ 1.) It was amended in 1976 to conform to the determinate sentencing law. (See Stats. 1976, ch. 1139, § 265, p. 5137.) At that time it provided a sentence for attempted murder of five, six or seven years. Section 664 was last amended in 1986 to increase the sentence for *249 attempted murder to five, seven or nine years. Prior to the 1986 amendment, numerous cases had held that attempted murder was not exempt from enhancement by section 12022.7. (People v. Superior Court (Grilli), supra, 84 Cal. App.3d at p. 513; People v. Gray, supra, 91 Cal. App.3d at p. 551; People v. Young, supra, 120 Cal. App.3d at pp. 694-695; People v. Wells, supra, 149 Cal. App.3d at pp. 505-506; People v. Allen, supra, 165 Cal. App.3d at p. 631.)
We must assume that when the Legislature amended section 12022.7 to add and delete exemptions, and amended section 664 to change the sentence for attempted murder, it was aware that offense was not exempt from the enhancement for infliction of great bodily injury. "It is a well-established principle of statutory construction that when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction. Accordingly, reenacted portions of the statute are given the same construction they received before the amendment. (See, e.g., In re Gladys R. (1970) 1 Cal.3d 855, 868-869 [83 Cal. Rptr. 671, 464 P.2d 127]; Brailsford v. Blue (1962) 57 Cal.2d 335, 339 [19 Cal. Rptr. 485, 369 P.2d 13]; Richfield Oil Corp. v. Public Util. Com. (1960) 54 Cal.2d 419, 430 [6 Cal. Rptr. 548, 354 P.2d 4]; Buckley v. Chadwick (1955) 45 Cal.2d 183, 200 [288 P.2d 12, 289 P.2d 242]; cf. Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist. (1978) 21 Cal.3d 650, 659 [147 P.2d 359, 580 P.2d 1155]. See generally 1A Sutherland, Statutory Construction (4th ed.) § 22.33, pp. 191-192.)" (Marina Point, Ltd. v. Wolfson (1982) 30 Cal.3d 721, 734-735 [180 Cal. Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) "`Where a statute has been construed by judicial decision, and that construction is not altered by subsequent legislation, it must be presumed that the Legislature is aware of the judicial construction and approves of it.' (People v. Hallner (1954) 43 Cal.2d 715, 719 [277 P.2d 393]; People v. Fox (1977) 73 Cal. App.3d 178, 181 [140 Cal. Rptr. 615].) `There is a strong presumption that when the Legislature reenacts a statute which has been judicially construed it adopts the construction placed on the statute by the courts.' (Armstrong v. Armstrong (1948) 85 Cal. App.2d 482, 485 [193 P.2d 495].)" (Wilkoff v. Superior Court (1985) 38 Cal.3d 345, 353 [211 Cal. Rptr. 742, 696 P.2d 134].) In the face of this legislative history, there is no reason to construe section 12022.7 to exempt attempted manslaughter from the enhancement for infliction of great bodily injury.

IV.
(2) On the facts of this case, the three-year enhancement to appellant's attempted manslaughter conviction provided for in section 12022.7 does not *250 result in a sentence incongruous with that which could have been imposed had he completed the offense; absent such incongruity, there is no basis to imply a legislative intent to exempt attempted manslaughter from the application of section 12022.7.
The basic flaw in appellant's argument is its assumption that the maximum middle term for attempted manslaughter is one-half of the middle term for manslaughter.[3] This assumption fails to consider that these are separate offenses. Whereas manslaughter necessarily involves the infliction of bodily injury, attempted manslaughter may or may not involve bodily injury. It also fails to consider that, although manslaughter is exempt from the three-year enhancement for the infliction of great bodily injury (§ 12022.7), such injuries can be considered as a factor in aggravation.[4] Thus, had appellant succeeded in killing Travis, the trial court could have imposed the aggravated term for manslaughter of 11 years. The correct comparison, therefore, is between the midterm for attempted manslaughter, enhanced for infliction of great bodily injury  six years  and the aggravated term for manslaughter, eleven years. An incongruous sentence can never result where the victim survives the attack because any term imposed for attempted manslaughter, enhanced for the infliction of great bodily injury, will always be less than the next higher term for manslaughter.[5]

V.
Even if anomalous sentences resulted, reversal is not required simply because the punishment for attempted manslaughter may exceed one-half that for the completed offense. Reversal is appropriate only if the punishment for attempted manslaughter is disproportionate to that for manslaughter. Neither algebraic symmetry nor mathematical exactitude is required in fitting punishment to crime. (People v. Wilson (1975) 50 Cal. App.3d 811, 817 [123 Cal. Rptr. 663].)
*251 Manslaughter and attempted manslaughter are separate offenses. (People v. Allen, supra, 165 Cal. App.3d at p. 631.) Manslaughter is the unlawful killing of a human being without malice. (§ 192.) Attempted manslaughter is a direct but ineffectual act, committed without malice, but intended to kill a human being. (§ 21a.) In other words, attempted manslaughter is an assault; i.e., an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. (See § 240.) Manslaughter is a homicide; attempted manslaughter an aggravated assault.[6]
"Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a statute prescribes a penalty `out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment." (In re Lynch (1972) 8 Cal.3d 410, 423-424 [105 Cal. Rptr. 217, 503 P.2d 921].) "Defining crime and determining punishment are matters uniquely legislative in nature, resting within the Legislature's sole discretion." (People v. Macias (1982) 137 Cal. App.3d 465, 475 [187 Cal. Rptr. 100].)
The sentencing range for attempted manslaughter, enhanced three years for the intentional infliction of great bodily injury, is four and one-half, six and one-half or eight and one-half years. (§§ 664, subd. (1), 193, subd. (a), and 12022.7.) It is not disproportionate to the sentencing range for assault with a deadly weapon, similarly enhanced, of five, six or seven years. (§ 12022.7.) "Only when the punishment is out of all proportion to the offense and is clearly an extraordinary penalty for a crime of ordinary gravity committed under ordinary circumstances, do the courts denounce it as unusual." (People v. Flores (1986) 178 Cal. App.3d 74, 88-89 [223 Cal. Rptr. 465].)
Appellant's argument is similar to that rejected in People v. Ladanio, supra, 211 Cal. App.3d 1114. There, a minor was convicted of attempted first *252 degree murder and sentenced to life with possibility of parole, a sentence which precluded his commitment to California Youth Authority (CYA). (Welf. & Inst. Code, § 1731.5, subd. (a).) Had he succeeded in killing his victims, he would have received a sentence of 25 years to life, and could have been committed to CYA. (In re Jeanice D. (1980) 28 Cal.3d 210, 221 [168 Cal. Rptr. 455, 617 P.2d 1087].) He urged the appellate court to "construe both [Welfare and Institutions Code] section 1731.5 and Penal Code section 664 as permitting defendants in his circumstances to be eligible for CYA commitment." (People v. Ladanio, supra, 211 Cal. App.3d at p. 1119.) Although finding the sentences of those juveniles convicted of attempted murder unquestionably anomalous when compared to those convicted of the completed crime, the court left the resolution of this incongruity to the Legislature. "[I]t is not the function of this court to define crimes and prescribe punishments. [Citation.] As noted in Jeanice D., `Although there may be no affirmative indication that the drafters of [§ 1731.5] specifically had this consequence in mind, by the same token there is similarly no indication that the drafters intended to preclude the normal application of section 1731.5.' (28 Cal.3d at p. 218.)" (Ladanio, supra, at p. 1119.)
It is for the Legislature, and not the courts, to consider appellant's argument that they excepted, by implication, attempted manslaughter from the application of section 12022.7.
The judgment is affirmed.[7]
Dossee, J., concurred.
NEWSOM, Acting P.J.
I respectfully dissent from the conclusion of the majority that the sentence for attempted manslaughter is subject to the enhancement provisions of Penal Code section 12022.7 for the infliction of great bodily injury.
Appellant's argument is founded upon the fundamental sentencing premise stated in Penal Code section 664 that, with the exception of "willful, deliberate and premeditated murder," an attempted felony "is punishable by imprisonment in the state prison for one-half the term of imprisonment *253 prescribed upon a conviction of the offense so attempted...."[1] Under section 664, "... the imposition of a jail sentence for an attempt must be limited to one-half of the maximum jail term which can be given for the substantive crime." (In re Nickelson (1957) 152 Cal. App.2d 579, 581 [314 P.2d 180].) Appellant points out that if he had "actually killed" the victim and been convicted of voluntary manslaughter, the range of permissible sentences would have been three, six or eleven years (Pen. Code, § 193, subd. (a)) with no possible imposition of a great bodily injury enhancement under Penal Code section 12022.7. Where, as here, the victim is not killed and a conviction of attempted voluntary manslaughter eventuated, imposition of a three-year great bodily injury enhancement may result in a more severe sentence imposed upon the defendant for the attempted offense, in contravention of the "one-half the term" sentencing prescription of section 664.[2]
Thus, argues appellant, imposition of a great bodily injury enhancement for a conviction of attempted voluntary manslaughter "upsets the sentence reduction scheme of Penal Code section 664 and causes incongruous sentencing results." He maintains that, by implication, attempted manslaughter must be included along with manslaughter in the offenses excepted from the operation of Penal Code section 12022.7. Respondent submits that the statute is unambiguous in the omission of attempted manslaughter from the enumerated crimes not subject to punishment enhancement for great bodily injury, and cannot be interpreted to add exceptions the Legislature has failed to specifically and expressly recognize.
Appellant does not present a claim of cruel and unusual punishment; the issue is solely one of statutory interpretation.[3] We must interpret Penal Code section 12022.7 to effectuate the intent of the Legislature. (People v. Woodhead (1987) 43 Cal.3d 1002, 1007 [239 Cal. Rptr. 656, 741 P.2d 154]; People v. Arant (1988) 199 Cal. App.3d 294, 296 [244 Cal. Rptr. 645].) "Penal statutes must be interpreted in light of the objective sought to be achieved, as well as the evil sought to be averted. [Citations.]" (People v. Hernandez *254 (1991) 231 Cal. App.3d 1376, 1384 [283 Cal. Rptr. 81].) To ascertain the legislative intent, "we look first to the words themselves." (Woodhead, supra, at p. 1007; People v. Overstreet (1986) 42 Cal.3d 891, 895 [231 Cal. Rptr. 213, 726 P.2d 1288].) Where possible, significance must be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose. (People v. McCart (1982) 32 Cal.3d 338, 342 [185 Cal. Rptr. 284, 649 P.2d 926].) A statute must be construed in the context of the entire statutory scheme of which it is a part, in order to achieve harmony among the parts. (Woodhead, supra, at p. 1009; Seidler v. Municipal Court (1993) 12 Cal. App.4th 1229, 1234 [16 Cal. Rptr.2d 90].) Also to be considered is the maxim that "`... statutes should be interpreted in such a way as to make them consistent with each other, rather than obviate one another. [Citation.]'" (City of Lafayette v. East Bay Mun. Utility Dist. (1993) 16 Cal. App.4th 1005, 1015 [20 Cal. Rptr.2d 658]; quoting from Nickelsberg v. Workers' Comp. Appeals Bd. (1991) 54 Cal.3d 288, 298 [285 Cal. Rptr. 86, 814 P.2d 1328].) Finally, we have been presented with an exception to the great bodily injury punishment enhancement provisions of section 12022.7, which is "`"to be strictly construed. In interpreting exceptions to the general statute courts include only those circumstances which are within the words and reason of the exception.... One seeking to be excluded from the sweep of the general statute must establish that the exception applies." (Barnes v. Chamberlain (1983) 147 Cal. App.3d 762, 767 [195 Cal. Rptr. 417].)'" (Da Vinci Group v. San Francisco Residential Rent etc. Bd. (1992) 5 Cal. App.4th 24, 28 [6 Cal. Rptr.2d 461]; see also City of Lafayette, supra, at p. 1017.)
I agree with appellant that omission of attempted manslaughter from the crimes excepted from the operation of Penal Code section 12022.7 creates a sentencing scheme which may often contravene the fundamental directive of Penal Code section 664 to impose terms of imprisonment for attempted felonies which are "one-half the term of imprisonment prescribed upon a conviction of the offense so attempted." If, for instance, a lower or middle term is imposed upon a defendant convicted of attempted voluntary manslaughter, enhanced by a three-year great bodily injury enhancement, the aggregate term will be respectively greater than or equal to that which may be imposed for voluntary manslaughter without the addition of a section 12022.7 enhancement. I do not believe the Legislature, in the enactment of section 12022.7, intended sentencing results so inconsistent with the existing law embodied in section 664.[4] Including by implication attempted manslaughter in the crimes to which section 12022.7 does not apply furthers the *255 rule of statutory interpretation that absurd consequences are to be avoided and properly achieves harmony among the sentencing statutes. (Cf. People v. Hull (1991) 1 Cal.4th 266, 272 [2 Cal. Rptr.2d 526, 820 P.2d 1036]; People v. Pieters (1991) 52 Cal.3d 894, 899 [276 Cal. Rptr. 918, 802 P.2d 420].)
The possibility that a great bodily injury enhancement may be stricken in the discretion of the trial court pursuant to Penal Code section 1170.1, subdivision (h),[5] does not, in my view, negate the incongruous sentencing results which may occur if attempted manslaughter is excluded from the crimes given exemption from the operation of Penal Code section 12022.7 as the Attorney General claims. A great bodily injury enhancement may be stricken only if mitigating circumstances predominate, and only upon the exercise of discretion. (Cf. People v. Roe (1983) 148 Cal. App.3d 112, 120 [195 Cal. Rptr. 802]; People v. Hughes (1980) 112 Cal. App.3d 452, 463 [169 Cal. Rptr. 364].) In all other cases, a great bodily injury enhancement is imposed, leaving the sentencing result for convictions of attempted manslaughter disproportionately severe as compared to manslaughter convictions where no such enhancement is ever permitted under section 12022.7.
Nor am I inclined to ignore the sentencing incongruities that result from adding a three-year Penal Code section 12022.7 enhancement to an attempted manslaughter sentence by the rule that when two or more enhancements may be imposed for a single offense, "... only the greatest enhancement shall apply" under Penal Code section 1170.1, subdivision (e). Even if by operation of subdivision (e) of Penal Code section 1170.1 the lesser enhancement is stricken  as was the one-year enhancement for use of a deadly weapon in appellant's case  the sentence imposed for attempted manslaughter, with the addition of the three-year great bodily injury enhancement, may and often will exceed one-half of the term for manslaughter, thereby contravening the sentencing formula stated in Penal Code section 664.
I think the language of Penal Code section 12022.7 indicates a legislative intent to treat the reference to "manslaughter" as one of the enumerated offenses exempt from the statute as including attempted manslaughter by *256 necessary implication. The first paragraph of section 12022.7 specifically precludes imposition of a three-year enhancement if "... infliction of great bodily injury is an element of the offense" of which the defendant is convicted. (See also People v. Pitts (1990) 223 Cal. App.3d 1547, 1559 [273 Cal. Rptr. 389]; People v. Parrish (1985) 170 Cal. App.3d 336, 344 [217 Cal. Rptr. 700].) Murder and manslaughter, two of the four exempted crimes listed in the third paragraph of section 12022.7 will, of course, always include great bodily injury. (Cf. Pitts, supra, at p. 1559.) Only attempted murder and attempted manslaughter may not have as elements of those offenses great bodily injury. Thus, having already expressly excluded offenses which have as an element great bodily injury, the Legislature had no reason to refer to murder and manslaughter as listed exempt offenses except for the purpose of excluding attempts to commit those offenses from the provisions of the statute. Otherwise, the references to murder and manslaughter in section 12022.7 would have no apparent meaning or purpose. I adhere to the maxim of statutory interpretation that "... where possible, significance should be given to every word, phrase, sentence and part of an act in furtherance of the legislative purpose." (People v. McCart, supra, 32 Cal.3d 338, 342; Harroman Co. v. Town of Tiburon (1991) 235 Cal. App.3d 388, 395 [1 Cal. Rptr.2d 72].) An interpretation of a statute which makes some words surplusage is to be avoided. (California Mfrs. Assn. v. Public Utilities Com. (1979) 24 Cal.3d 836, 844 [157 Cal. Rptr. 676, 598 P.2d 836]; Ingredient Communication Council, Inc. v. Lungren (1992) 2 Cal. App.4th 1480, 1492 [4 Cal. Rptr.2d 216]; Kriz v. Taylor (1979) 92 Cal. App.3d 302, 311 [154 Cal. Rptr. 824].) Failure to include by necessary implication attempted manslaughter as an exempted offense not only leads to anomalous sentencing results, but also renders superfluous the specific reference to manslaughter as one of the statutory exceptions.
I am not persuaded to follow those cases which have concluded that attempted murder does not fall within the Penal Code section 12022.7 exempted offenses. (See People v. Allen (1985) 165 Cal. App.3d 616, 631 [211 Cal. Rptr. 837]; People v. Wells (1983) 149 Cal. App.3d 497, 505 [195 Cal. Rptr. 608]; People v. Young (1981) 120 Cal. App.3d 683, 695 [175 Cal. Rptr. 1]; People v. Gray (1979) 91 Cal. App.3d 545, 551 [154 Cal. Rptr. 555]; People v. Superior Court (Grilli) (1978) 84 Cal. App.3d 506, 513, fn. 5 [148 Cal. Rptr. 740], overruled on other grounds in People v. Superior Court (Mendella) (1983) 33 Cal.3d 754, 758 [191 Cal. Rptr. 1, 661 P.2d 1081].) I find unconvincing the prevailing rationale of those cases  that attempted murder is a "separate and distinct crime" not specifically mentioned as an *257 exception. (Ibid.)[6] Conviction for attempted commission of a crime requires both proof of the specific intent to commit that crime, and a direct but ineffectual act taken toward its commission. (Pen. Code, § 21a; People v. Morales (1992) 5 Cal. App.4th 917, 925 [7 Cal. Rptr.2d 358]; People v. Bishop (1988) 202 Cal. App.3d 273, 283 [248 Cal. Rptr. 678]; People v. Valdez (1985) 175 Cal. App.3d 103, 108 [220 Cal. Rptr. 538].) Mere preparation to commit the target crime is not enough; the act must include "some appreciable fragment of the crime" which would result in commission of the crime but for the intervention of extraneous circumstances. (People v. Memro (1985) 38 Cal.3d 658, 698 [214 Cal. Rptr. 832, 700 P.2d 446]; People v. Bishop, supra, 202 Cal. App.3d at p. 283; People v. Meyer (1985) 169 Cal. App.3d 496, 504 [215 Cal. Rptr. 352]; People v. Cole (1985) 165 Cal. App.3d 41, 49 [211 Cal. Rptr. 242].) "[A] crime necessarily includes an attempt to commit that crime. [Citations.]" (People v. Anderson (1979) 97 Cal. App.3d 419, 424 [158 Cal. Rptr. 727].) Thus, attempted manslaughter is necessarily included in the offense of manslaughter. (Cf. People v. Martinez (1980) 105 Cal. App.3d 938, 942-943 [165 Cal. Rptr. 11]; People v. Heffington, supra, 32 Cal. App.3d 1, 11.) While manslaughter and attempted manslaughter are not the same crime, I believe the Legislature intended the latter to be included in the former by necessary implication for the purpose of defining the offenses exempt from section 12022.7.[7]
*258 Accordingly, I conclude that attempted manslaughter is an offense exempted from the great bodily injury enhancement provisions of Penal Code section 12022.7. I would therefore modify the judgment by striking the three-year enhancement for great bodily injury and remand the case to the trial court for resentencing in accordance with the views expressed herein.
Appellant's petition for review by the Supreme Court was denied March 24, 1994. Mosk, J., was of the opinion that the petition should be granted.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise noted.
[2] Section 12022.7, subdivision (e), provides that "[t]his section shall not apply to murder or manslaughter or a violation of Section 451 or 452." Sections 451 and 452 define the crimes of arson and unlawfully causing a fire, respectively.
[3] This flawed assumption is also the basis for the dissenting opinion's conclusion that appellant's sentence is inconsistent with the legislative intent underlying section 664. See dissenting opinion, footnote 2, post, where the midterm sentence for attempted manslaughter, enhanced by section 12022.7, is compared with the midterm sentence for manslaughter.
[4] "Circumstances in aggravation include: (a) Facts relating to the crime, whether or not charged or chargeable as enhancements, including the fact that: (1) The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Cal. Rules of Court, rule 421.)
[5] If appellant's argument were correct, incongruous sentences would result between those who attempt manslaughter by inflicting great bodily injury and those who do no harm to their intended victim. Otherwise, defendants would receive the same sentence regardless of the disparity in the injuries inflicted upon their victims. Appellant, who inflicted eight stab wounds on his victim and tried with all his might to drive a knife into his victim's chest, deserves a greater punishment than someone who shoots at and misses his intended victim. (See § 1170, subd. (a)(1).)
[6] Indeed, this is the theory upon which appellant was tried. Count one of the information charged a violation of sections 664 and 187, subdivision (a), attempted murder. Count two charged a violation of section 245, subdivision (a)(1), assault with a deadly weapon and by means of force likely to produce great bodily injury. Each count alleged an enhancement under section 12022.7. The jury was instructed in accordance with CALJIC No. 17.03 that these two counts charged only one crime, and if they found appellant guilty of one count, "you must find him not guilty of the other."
[7] Pursuant to this court's miscellaneous order No. 93-1 filed on November 1, 1993, appellant is deemed to have challenged the constitutionality of CALJIC No. 2.90 (reasonable doubt instruction) based on People v. Sandoval (1992) 4 Cal.4th 155 [14 Cal. Rptr.2d 342, 841 P.2d 862], certiorari granted September 28, 1993, ___ U.S. ___ [125 L.Ed.2d 789, 114 S.Ct. 40], and that challenge is rejected for the reasons stated in People v. Jennings (1991) 53 Cal.3d 334, 385-386 [279 Cal. Rptr. 780, 807 P.2d 1009].
[1] Section 664 "fixes the penalties for crime attempts not punishable under other statutes," including voluntary manslaughter. (People v. Heffington (1973) 32 Cal. App.3d 1, 10-11 [107 Cal. Rptr. 859].)
[2] The following sentence possibilities are available for voluntary manslaughter and attempted voluntary manslaughter, depending upon whether the victim lives or dies, if a great bodily injury enhancement is added to the sentence for the latter offense under section 12022.7: for the lower term, four and one-half years if the victim lives, but only three years if the victim dies; a middle term of six years whether the victim lives or dies; an upper term of eight and one-half years if the victim lives and eleven years if the victim dies.
[3] I would certainly not find the punishment scheme of Penal Code section 12022.7 to be unconstitutional, even if I were to construe the statute as authorizing a three-year great bodily injury enhancement of attempted manslaughter convictions.
[4] Section 12022.7 was enacted in 1976 (Stats. 1976, ch. 1139, § 306, p. 5162) and operative July 1, 1977, long after the enactment of the "one-half the term of imprisonment" prescription for attempted crimes provided in section 664. In enacting statutes, the Legislature is presumed to be aware of existing laws in effect at the time legislation is passed and to have enacted statutes in light of such existing laws. (People v. Overstreet, supra, 42 Cal.3d at p. 897.)
[5] In pertinent part, subdivision (h) of section 1170.1 provides that "... the court may strike the additional punishment for the enhancements provided in Sections ... 12022.7 ..., if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment." (See also People v. Alexander (1992) 8 Cal. App.4th 602, 605 [10 Cal. Rptr.2d 450].)
[6] The cited cases engaged in but superficial statutory analysis, making no mention of the sentencing results that may eventuate upon imposition of a great bodily injury enhancement for attempted murder and manslaughter, leading to greater punishment for attempted than completed offenses.

I also place no particular significance upon the stated rationale that "in the first paragraph of Penal Code section 12022.7, the statute specifically mentions that enhancements apply to persons who `in the commission or attempted commission of a felony' inflict great bodily injury on other persons. Yet, in the third paragraph, where exempted crimes are listed, there is no specific exemption for attempts. This evidences an intent of the Legislature not to exclude attempted murder from the provisions of the section." (See People v. Wells, supra, 149 Cal. App.3d at p. 505.) The reference to "attempted commission" of felonies in paragraph 1 of section 12022.7 merely encompasses all felonies within the general scope of the great bodily injury enhancement, both attempts and completed crimes; I find in it no further apparent meaning or import. The list of exempted crimes in the third paragraph is an entirely separate matter. I can as easily infer a legislative intent to include attempted murder and manslaughter within the exemption based upon the earlier mention of attempts in the statute as to view the statutory language in the manner suggested in Wells.
[7] I may further observe that the sentencing schemes for murder and attempted murder with imposition of a great bodily injury enhancement under section 12022.7 do not result in sentences which grievously offend the "one-half the term of imprisonment" prescription of Penal Code section 664 for unsuccessful attempts to commit crimes. The sentence for first degree murder is 25 years to life. The sentence for second degree murder is 15 years to life. The sentence for attempted murder with premeditation and deliberation plus the great bodily injury enhancement under section 12022.7 is three years to life. The sentence for attempted murder without premeditation and deliberation plus the great bodily injury enhancement is 8 years, 10 years and 12 years. (Pen. Code, §§ 190, 193, 12022.7.)